EXHIBIT A

**AMERICAN ARBITRATION ASSOCIATION**
**Employment and Class Arbitration Tribunal**

_____

In the Matter of the Arbitration Between:

       **JOSEPH GUTIERREZ and KYLE LYNN,**

           **Claimants,**

             **vs.**

       **DRILL CUTTINGS DISPOSAL COMPANY,**

           **Respondent.**

Case Number:   01-15-0002-6872

_____

### CLAUSE CONSTRUCTION AWARD

      I, Thomas J. Brewer, the undersigned arbitrator, having been designated in accordance with the arbitration agreements entered into between the above-named parties and dated April 10, 2013 (Claimant Lynn) and August 26, 2013 (Claimant Gutierrez), and having considered the parties' submissions on clause construction, do hereby issue this partial final **Clause Construction Award** pursuant to Rule 3 of the Supplementary Rules for Class Arbitrations ("Class Arbitration Rules") of the American Arbitration Association ("AAA").

### I.      PROCEDURAL SUMMARY.

      **Parties and Claims.**   Respondent DRILL CUTTINGS DISPOSAL COMPANY ("DCDC") is a company that provides drill cuttings disposal services to the oil and gas industry.   At all relevant times Claimants JOSEPH GUTIERREZ and KYLE LYNN were engaged as employees of DCDC pursuant to identical "Terms of Employment Notice" agreements ("Employment Agreements") executed April 10, 2013, and August 26, 2013, providing, in relevant part, as follows:

> By signing below, you agree that any controversy or claim arising out of or relating to your employment with Drill Cuttings Disposal Company shall be settled by arbitration administered by the American Arbitration Association under its Employment Dispute Resolution Rules and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

CLAUSE CONSTRUCTION AWARD - 1

Claimants Gutierrez and Kyle Lynn submitted their Demand for Arbitration ("Demand") to the AAA on February 17, 2015.  The Demand asserts claims against DCDC for alleged failures "to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.* and/or applicable state law."  Claimants' Demand seeks "permission to proceed on behalf of a class."  Respondent DCDC denies all of Claimants' claims and specifically denies that this matter is appropriate for certification as a class or collective action.   (Revised Answer, submitted June 19, 2015.)

Claimants are represented in this matter by their counsel, Richard J. (Rex) Burch, Bruckner Burch PLLC.  Respondent is represented by its counsel Hon. F. A. Little, Jr., Steven M. Oxenhandler, Michael J. O'Shee and Martha R. Crenshaw Gold, Weems, Bruser, Sues & Rundell.

An initial Preliminary Hearing was held by telephone conference with the undersigned arbitrator in this matter on June 16, 2015.  Procedural Order No. 1, issued following that hearing, set a schedule for the parties to submit briefs on the Clause Construction Phase of this arbitration (*see* the Class Arbitration Rules, Rule 3, discussed below).  Subsequently, the parties' briefs were timely submitted.  Pursuant to notice, a telephonic hearing for the purpose of hearing oral argument on the clause construction issues was held on August 6, 2015, and the clause construction issues were submitted for decision.

**The Clause Construction Issue.**  Rule 3 of the Class Arbitration Rules provides:

> Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award"). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award. Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial review of the Clause Construction Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Clause Construction Award. If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court.

CLAUSE CONSTRUCTION AWARD - 2

> In construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis.

## II.     DISCUSSION.

**Applicable Standards.**   Several recent U.S. Supreme Court decisions establish the standards to be applied in making the clause construction determination required under Rule 3 in cases, such as the present arbitration, subject to the Federal Arbitration Act, 9 U.S.C. §1, *et seq*. ("FAA")[1]

First, class arbitration is a matter of consent; an arbitrator may employ class procedures only if the parties have authorized them.  A party may not be compelled to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so. *Oxford Health Plans v. Sutter,* 135 S.Ct. 2064, 2067-70 (2013); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 682-84 (2010).

Second, when making a clause construction determination the arbitrator's task is to interpret and enforce a contract, not to make public policy.  *Id.*

Third, such a determination must ensure that private agreements to arbitrate are enforced according to their terms; in this endeavor, as with other issues of contractual interpretation, the parties' intentions control.  *Stolt-Nielsen, supra,* 559 U.S. 662, at 682-83.  *See generally, Volt Information Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 476-78 (1989).

Fourth, parties are generally free to structure their arbitration agreements as they see fit; this includes the freedom to specify with whom they choose to arbitrate their disputes.  *Id.* For example, parties, if they choose to do so, may agree to arbitration agreements that do not permit class arbitration of a federal-law claim.  *American Express Co. v. Italian Colors Restaurant*, 13 S.Ct. 2304, 2308 (2013); *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011).

Fifth, an implicit agreement to authorize class-action arbitration is not a term that an arbitrator may infer solely from the fact that the parties entered into an agreement to arbitrate.  *Stolt-Nielsen, supra,* 559 U.S. 662, at 685-87 (". . . the differences between bilateral and class action arbitration are too great for arbitrators to presume. . . that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in

---

[1]    The authorities referenced above discuss the principles relevant to clause construction analysis in cases subject to the FAA.   It is theoretically possible that different principles might govern in cases subject to various state arbitration statutes, if applicable and if not preempted by the FAA.  Neither party to the present arbitration contended, and the record presented did not establish, that differing state law principles should be applied in the present case.  Rather, both parties argued the clause construction issues on the basis that the FAA applies here.

CLAUSE CONSTRUCTION AWARD - 3

class proceedings. . .we see the question as being whether the parties *agreed to authorize* class arbitration")(emphasis in original).

The parties agree that Louisiana law governing interpretation of contracts should be applied to construction of their arbitration agreements.  *See Ranger Ins. Co. v. Shop Rite, Inc.,* 05-452 (La. App. 5 Cir. 1/1/06), 921 So.2d 1040, 1043, *citing cases*:

> As noted by the Louisiana Supreme Court in *Campbell v. Melton,* 01–2578 (La.5/14/02), 817 So.2d 69:
>
> In interpreting contracts, we are guided by the general rules contained in articles 2045–2057 of the Louisiana Civil Code. The interpretation of a contract is the determination of the common intent of the parties with courts giving the contractual words their generally prevailing meaning unless the words have acquired a technical meaning. La. Civ.Code arts. 2045, 2047; See e.g., *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co.,* 93–0911 (La.1994), 630 So.2d 759, 763. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties. La. Civ.Code art.2046.
>
> Further, each provision in an agreement must be interpreted in light of the other provisions so that each is given the meaning suggested by the agreement as a whole. La. C.C. art.2050. *Alco Collections, Inc. v. Poirier,* 952582 (La.App. 1st Cir.9/27/96), 680 So.2d 735, *writ denied,* 96–2628 (La.12/13/96), 692 So.2d 1067; *Security Center Protection Services, Inc. v. Lafayette Sec. & Electronic Systems, Inc.,* 95–693 (La.App. 5th Cir.1/17/96), 668 So.2d 1156, *writ denied,* 96–0428 (La.3/29/96), 670 So.2d 1217. Although a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include. La. C.C. art.2051.

Provisions of the Louisiana Civil Code potentially relevant to the decision under consideration here include:

> Art. 2045. Interpretation of a contract is the determination of the common intent of the parties.

Art. 2046. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.

Art. 2047. The words of a contract must be given their generally prevailing meaning. . .

Art. 2048. Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract.

Art. 2050. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.

Art. 2051.  Although a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include.

Art. 2053. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.

Art. 2054. When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose.

Art. 2056. In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.

A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.

**The Parties' Agreements.**     The terms of DCDC's Employment Agreements with Claimants are identical.  Each of the Employment Agreements provides, in relevant part, as follows:

CLAUSE CONSTRUCTION AWARD - 5

> Your employment is at the mutual consent of the employer and employee so either party can terminate the employment relationship at any time with or without cause or notice.   You are considered an "at will" employee as per Article 2474 of the Louisiana Civil Code . . . This is the entire agreement relating to your employment and no other agreements shall be effective unless they are in writing.
>
> By signing below, you agree that any controversy or claim arising out of or relating to your employment with Drill Cuttings Disposal Company shall be settled by arbitration administered by the American Arbitration Association under its Employment Dispute Resolution Rules and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

The record established that the Employment Agreements were standard form agreements drafted by DCDC, and that execution of such an Employment Agreement was and is a condition of employment with DCDC.   The record presented included an Affidavit from DCDC's President, Jeffrey Reddoch, Jr., executed on January 27, 2015, stating, in relevant part:

> It is DCDC's policy that all employees execute a written employment contract to memorialize the terms of employment with DCDC. In this regard, DCDC has developed a standard form agreement which sets out the terms of employment for each employee hired by DCDC. One such term of employment is the requirement that any dispute arising out of or relating to the employment relationship be settled through arbitration administered by, and subject to the rules of, the American Arbitration Association.   The arbitration clause has always been a part of DCDC's standard employment contract, and the execution of the employment contract is a condition precedent to employment by DCDC.

Cl. Op. Br. on Cl. Constr., Ex. A ("Reddoch Aff.").   The record presented established that the language quoted above from the relevant Employment Agreements is the same "standard form agreement" and "standard employment contract" described above in Mr. Reddoch's Affidavit and is required as "a condition precedent to employment by DCDC."[2]

---

[2]       As of the date of oral argument Claimants represented that they were holding consents to join this arbitration from 17 different claimants, including Claimants Gutierrez and Lynn, and that the operative language of

CLAUSE CONSTRUCTION AWARD - 6

The parties in the present case have not made any stipulation that their arbitration agreements are silent on class or collective arbitration.  In this respect, the facts of the present case differ from those at issue in *Stolt-Nielsen:*

> The parties in Stolt-Nielsen had entered into an unusual stipulation that they had never reached an agreement on class arbitration. . . In that circumstance, . . . the [arbitration] panel's decision was not - indeed, could not have been - "based on a determination regarding the parties' intent." "Th[e] stipulation left no room for an inquiry regarding the parties' intent."

*Oxford Health Plans, supra,* 133 S.Ct. 2064, at 2069-70 (citations omitted.)  No such stipulation exists in the present record.  Accordingly, the parties' intent must be determined from the language used in their arbitration agreements and from the other relevant evidence and considerations discussed below.

**The Parties' Contentions.**      Claimants contend that the identical Employment Agreements should be construed as permitting the arbitration to proceed collectively for three main reasons:    First, Claimants contend that the language of the relevant agreements ("any controversy or claim arising out of or relating to your employment with Drill Cuttings Disposal Company shall be settled by arbitration") broadly permits collective arbitration.  Second, Claimants contend that the FLSA's provision authorizing workers to proceed "on behalf of . . . themselves and others similarly situated," 29 U.S.C. §216(b), constitutes an applicable "default rule" of the sort discussed in *Stolt-Nielsen, supra,* 559 U.S. 662, at 674-76, and has not been waived by Claimants.[3]  Finally, Claimants contend that Louisiana rules of contract interpretation

---

the Employment Agreement for each of these employees is materially identical.  Claimants also hold one consent filed at a later date, for DCDC employee Ralph Daigle II, who signed a different form of agreement using different language.  Claimants conceded that, based on these differences, they do not seek inclusion of Mr. Daigle in the collective action sought here.  Respondent stated at oral argument that it opposes joinder of any of these claimants, including claimants Gutierrez and Lynn,  in any arbitration brought pursuant to the Employment Agreements.

[3]    The "collective" actions authorized by Section 216(b) for FLSA claims depart from usual class action procedure in important respects.  In particular, Congress conditioned its authorization of "collective" FLSA actions on requiring putative class members to "opt in" rather than "opt out."  *See, e.g., Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11thCir. 1996)(by adopting "the opt-in joinder procedures of section 216(b) of the FLSA" Congress "impliedly rejected the Rule 23 class action procedures"); *Kelly v. Alamo*, 964 F.2d 747, 748 (8th Cir. 1992).  In particular, possible harm to absent class members would seem to be less of an issue in an FLSA collective arbitration than in an "opt-out" class action brought under judicial procedural rules.  In the present arbitration, for example, because DCDC's "arbitration clause has always been a part of DCDC's standard employment contract, and the execution of the employment contract is a condition precedent to employment by DCDC," Reddoch Aff., no one else could join the proceeding except people who have previously entered into written agreements with DCDC to arbitrate their employment-related claims, and even then such participation in the collective proceeding sought by Claimants would be possible only if the absent employee also executed another written agreement to specifically "opt-in" to this particular arbitration.  On the other hand, even allowing for such differences, the collective proceeding sought by Claimants would involve several of the same procedural issues, *e.g.,* absence of merits-based appellate review and possible procedural complexity and delays, discussed in *Stolt-Nielsen* and

confirm that the relevant agreements permit collective arbitration, and also require any ambiguities to be construed against DCDC, the drafter.

Respondent disputes these conclusions.   In particular, Respondent argues that the relevant contract language, construed as a whole, does not permit collective arbitration, but rather permits only bilateral arbitration of disputes arising between DCDC and the signatory employee, individually.   Respondent also argues that Section 216(b) of the FLSA constitutes a procedural provision, not an arbitrable claim, that has no place in the arbitrations mandated by the Employment Agreements unless those agreements, properly construed, evidence a mutual intention of the parties, at the time of contracting, to permit such collective arbitrations. Finally, Respondent contends that the applicable Louisiana rules of contract interpretation preclude interpretation of the relevant contract language as permitting collective arbitration.

**Interpretation of the Parties' Agreements**.   Both sides made persuasive points concerning the appropriate interpretation of the Employment Agreements.   I extend my compliments to counsel on both sides of the case for the skill and professionalism with which these arguments were presented.

### 1.    Analysis of the Language Used in the Employment Agreements.

The language used in the Employment Agreements does not expressly authorize collective arbitration.  Conversely, the language used in the Employment Agreements does not expressly forbid collective arbitration.

The particular language the parties did choose to employ in their Employment Agreements suggests that the parties probably did intend those agreements to permit collective arbitration of Claimants' FLSA claims,[4] but the language used is sufficiently contradictory that this conclusion is not free from doubt.   I reach this conclusion for the following reasons.

The language used in the Employment Agreements to define the scope of arbitrable controversies is sufficiently broad to support the conclusion that the parties probably intended to permit the collective arbitration of Claimants' FLSA claims authorized by Section 216(b).   As discussed above, the relevant language includes the provision that "By signing below, you agree

---

*Concepcion.*  The collective action sought here also would allow some claimants to serve in a representative capacity for other claimants, and would compel Respondent to arbitrate with more than one claimant per arbitration.   For these reasons, the question posed in *Stolt-Nielsen, supra,* 559 U.S. 662, at 685-87 (". . . we see the question as being whether the parties *agreed to authorize* class arbitration")(emphasis in original) should perhaps be rephrased in the present matter as requiring an inquiry into whether the parties agreed to authorize *collective* arbitration.

[4]    Although the Demand references possible state law claims in addition to the FLSA claims, the parties' submissions on clause construction focused exclusively on collective arbitration of the FLSA claims.  No case for class treatment of the FLSA claims and no case for either class or collective arbitration of any state law claims has been established.

CLAUSE CONSTRUCTION AWARD - 8

that any controversy or claim arising out of or relating to your employment with Drill Cuttings Disposal Company shall be settled by arbitration. . .."

As Claimants note, this is extremely broad language. *See* Cl. Op. Br. on Cl. Constr., pp. 8-10, *citing cases.* In particular, the parties' use of the phrase *"any controversy or claim . . . relating to your employment with Drill Cuttings Disposal Company. . ."* is unquestionably broad enough to encompass the particular type of "claim" at issue here – FLSA claims. Indeed, DCDC expressly so argued in its brief to the United States District Court for the Western District of Texas seeking to compel arbitration of the present case. Cl. Op. Br. on Cl. Constr., Ex. A, at 6-7, ("The broad language of the plaintiffs' agreements clearly covers the pending employment dispute over the payment of wages, brought under the FLSA"), *citing Hampton v. ITT Corp.,* 829 F.Supp. 202 (S.D. Tex. 1993). The language used leaves no doubt that the parties intended to require arbitration of an FLSA "claim" brought by a signatory employee.

As the Supreme Court authorities referenced above make clear, however, even a clear agreement to arbitrate a particular "claim," without more, does not establish a companion intention to authorize collective arbitration of the arbitrable claim.

Claimants argue persuasively, however, that in this case the Employment Agreements do contain more, in at least two important respects. First, the agreements do not require arbitration simply of covered "claims." Rather, they require arbitration of "any *controversy* or claim arising out of or *relating to your employment* with Drill Cuttings Disposal Company. . .." (Emphasis supplied.) The generally prevailing meaning of the words used here, including in particular the expansive term "any," the express inclusion of "any controversy" alongside "any . . . claim," and the broad scope connoted by "relating to your employment" all strongly suggest that the parties intended to make all types of disputes relating to the signatory employee's employment relationship with DCDC arbitrable. Both Louisiana and other courts have often held clauses containing similar language to be extremely broad in scope. *Id.* Moreover, courts frequently distinguish "narrow" clauses using language requiring arbitration of disputes "arising under" a contract from clauses using broader language, such as the parties used here, requiring arbitration of disputes that "relate to" a contract or a relationship. *See, e.g., Pennzoil Exploration & Prod. Co. v. Ramco Energy, Ltd.,* 139 F.3d 1061, 1067 (5th Cir. 1998). Although such distinctions typically address whether the parties intended to make a particular type of dispute arbitrable or not, as opposed to whether they intended to permit class or collective arbitration of an arbitrable dispute, the language used here is certainly broad enough to suggest that the parties intended to require arbitration of all types of controversies and disputes related to the signatory employee's employment relationship with DCDC. *See, e.g., Tracer Research Corp. v. Nat'l Env. Servs. Co.,* 42 F.3d 1292, 1295 (9th Cir. 1994), *citing cases.* Such "any claim" language, similar to the language used in the Employment Agreements, can reasonably be construed as broad enough to express an intention to encompass class arbitration. *See, e.g., Rame, LLC v. Popovich,* 878 F.Supp.2d 439, 449, 453 (S.D.N.Y. 2012).

Second, the particular type of "controversy or claim" at issue in this case expressly provides for collective arbitration as a matter of express statutory entitlement. This component

of an FLSA claim was prescribed by Congress, long before execution of the arbitration agreements at issue here, in Section 216(b).  The statute expressly provides that a claim for overtime pay brought under the FLSA can be maintained by "one or more employees for and in behalf of himself and themselves and other employees similarly situated" but subject to the requirement that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party. . .." 29 U.S.C. §216(b).  *See Hoffman La Roche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989)("Congress has stated its policy that [FLSA] plaintiffs should have the opportunity to proceed collectively.") Thus, the right to proceed collectively, subject to the "opt-in" requirement, is an express statutory incident of the type of "claim" at issue here; the statutory delineation of the content of such an FLSA claim includes the express statutory entitlement, pursuant to Section 216(b), to proceed collectively in the same proceeding with other employees who affirmatively "opt-in" to the dispute.  *See De Ascensio v. Tyson Foods, Inc.,* 342 F.3d 301, 305-06 (3rd Cir. 2003).

Nothing in the relevant contract language concerning the scope of arbitrable claims shows any intent by the parties to make only a portion of the employee's FLSA "controversy or claim" arbitrable, or to make only some portions of the claim arising under 29 U.S.C. §201-219 arbitrable but not other portions.  Rather, the parties expressly agreed to make *"any controversy or claim . . . relating to your employment with"* DCDC arbitrable.  This language signals an intention by the parties to make the entirety, not just part, of the employee's right to assert an FLSA "claim" arbitrable.  By their express terms, the arbitration agreements here require arbitration of FLSA claims brought by the signatory employee; the FLSA, in turn, permits the employee to bring such claims "for and in behalf of himself and. . . other employees similarly situated. . .," subject to Section 216(b)'s "opt-in" requirement.  The broad language used by the parties indicates an intent to require arbitration of a type of "claim" that, as defined by Congress, includes a statutory entitlement to proceed collectively.[5]

The broad language used in the Employment Agreements to define the scope of arbitrable controversies must be read together, however, with the agreements' additional wording indicating that the parties intended each Employment Agreement to be a bilateral contract running only between DCDC and the single signatory employee.  Respondent argues quite persuasively that the agreements' repeated statements that "[y]our employment is at the mutual consent of the employer and employee . . .," "either party can terminate . . .," "[y]ou are considered an 'at will' employee . . .," "your employment . . .," and the particularized references to the pay rates due to the signatory employee and pay days, which vary from contract to contract, taken together (collectively, the "Bilateral Language"), must be interpreted as limiting the otherwise broad scope of the language discussed above requiring arbitration of "any

---

[5]   This circumstance distinguishes the particular type of "claim" at issue here from other federal statutory claims that include no such statutory guarantee of entitlement to proceed collectively.  Parties seeking class treatment of those other types of claims must rely on the procedural rules of a particular judicial forum, *e.g.,* Fed.R.Civ.P. 23 in the federal court system.  It would be entirely appropriate for the clause construction inquiry to insist on a more explicit expression of mutual intent to permit class arbitration of claims arising under such statutes than in the present case, where the entitlement to proceed collectively is defined by the underlying statute itself as an integral incident of the "claim" to be arbitrated.

controversy or claim arising out of or relating to your employment . . .."  Respondent has cited a number of authorities where courts and other arbitrators have construed similar language as signaling an intent to preclude class arbitration.  *See,e.g., R.Op.Br.,* at 18-30, *citing cases*.  On its face, the parties' use of such Bilateral Language does suggest, as Respondent argues, that they intended their arbitration agreement to cover only controversies or claims brought by the signatory employee, and not claims asserted by anyone else.

This conclusion is not free from doubt, however, for several reasons.  First, as some other courts have noted, Bilateral Language of the sort emphasized here by Respondent is not by itself a conclusive tool for determining whether parties intended to bar class or collective arbitration. In particular, phrases such as "you" and "your employment" do not expressly disclaim collective arbitration proceedings and do not necessarily signal an intent to preclude collective or class arbitration.

> Phrases such as "between Client and LHDR" and "this agreement" are routine contract terms that do not expressly disclaim class litigation.  All contracts are necessarily written between the parties to a transaction; if the identification of the parties or reference to "this agreement" precluded class litigation, class claims could never stem from contracts.  This is obviously not the case . . . Based on Supreme Court precedent and the persuasive authority cited here, the phrases "between Client and LHDR" and "this agreement" do not exclude class claims . . ..

*Harrison v. Legal Helpers Debt Resolution LLC, et al.,* No. 0:2012cv02145 - Document 74 (D. Minn. 2014), *citing cases* "that have also found silence on the issue of class arbitration despite language similar to the Agreement here*." See, e.g., Quilloin v. Tenet HealthSystem, Phila., Inc.,* 673F.3d 221, 225-26 (10th Cir.2012)(arbitration clause covering claims between "Company and I"); *Kovachev v. Pizza Hut, Inc.,* No. 12 C 9461, 2013 WL 4401373, at *1 (N.D. Ill.Aug. 15, 2013) (parties limited arbitration to "Pizza Hut and I"); *Kenneth J. Lee v. JPMorgan Chase & Co.,* 982 F.Supp.2d 1109 (C.D.Cal. 2013)(arbitration clause covered any disputes related to "my employment . . . with Washington Mutual;" the "intepretive [question] of whether or not the agreements authorize Plaintiffs to pursue their claims on a class, collective or representative basis" reserved to the arbitrator for decision); *Guida v. Home Sav. of Am., Inc.*, 793 F.Supp.2d 611, 613 (E.D.N.Y. 2011)(plaintiffs each had identical arbitration clauses covering "claims in connection with my employment;" the issue of "whether or not the plaintiffs in this case can proceed on a class basis" reserved to arbitrator for decision).  Thus, although the Bilateral Language relied upon by Respondent generally supports its proposed interpretation of the Employment Agreements, such language does not expressly or conclusively require interpretation of the agreements as precluding collective arbitration.  If the Bilateral Language were construed as was done in the other authorities cited above, reading the Bilateral Language together with the agreements' other key language ("any controversy or claim arising out of or relating to" the employment relationship) could reasonably yield an overall

CLAUSE CONSTRUCTION AWARD - 11

construction of the agreements closer to the one favored by Claimants than to the one urged by Respondent.

Second, as discussed above, the particular type of claim at issue here – an FLSA claim – includes as a statutorily-prescribed incident of such a claim the Section 216(b) right to proceed collectively when the opt-in requirement is satisfied.  This right is held by the individual signatory employee, and thus constitutes part of that individual employee's arbitrable "claim," as defined by Congress both before and at the times these agreements were drafted.  Thus, even allowing for the recurring Bilateral Language emphasized by Respondent, these agreements may have been intended to make all aspects, as defined by Congress, of the FSLA claim held by the "you" - *i.e.,* the individual signatory employee - arbitrable .

Third, Respondent's proposed interpretation of the Employment Agreements is difficult to reconcile with what these agreements do <u>not</u> say.  An employee's Section 216(b) entitlement to proceed collectively is a valuable right that can reduce significant burdens that otherwise might confront an FLSA plaintiff.  *See, e.g., Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 123, 1264 (1th Cir. 2009).   Nothing in the language at issue here suggests any intentional relinquishment of this important feature of the Claimants' FLSA claims. *See Alexander v. Cornett,* 42,147 (La. App. 2 Cir. 7/11/07), 961 So.2d 622, 632 *writ denied,* 2007-1681 (La. 11/2/07).   Louisiana law requires that agreements to waive or alter statutorily-established rights must be "clear and unambiguous." *Jones v. Gen. Motors Corp.,* 2003-1766 (la. 4/30/04), 871 So.2d 1109, 1118-20.  *See also Louisiana Health Serv. Indem. Co. v. Gambro A B,* 756 F.Supp. 2d 760, 762 (W.D. La. 2010);  *Prince v. Paretti Pontiac Co.*, 281 So.2d 112, 117 (La. 1973).[6]  The Employment Agreements at issue here do not contain any language clearly and unambiguously expressing that Claimants had knowledge of their collective action rights under Section 216(b) or clearly and unambiguously expressing an intention to relinquish those rights.

In addition, although DCDC now contends that the agreements were intended to mandate arbitration of Claimants' FLSA claims but simultaneously prohibit the collective proceedings authorized by Section 216(b), nothing in the relevant contract language expressly so states.   Such a construction of the parties' language is a bit like saying they intended to make "any claim" arbitrable, including FLSA claims, but intended this to mean that only FLSA "claims" with a shortened statute of limitations or restricted scope of possible remedies could be arbitrated.   If the parties had intended any such major surgery on the scope of the FLSA claims otherwise available under the statute they were agreeing to arbitrate, one would have expected at least some reference to it in the language of their agreement.  Although such an

---

[6]       Respondent's attempt to distinguish these authorities as applicable only to "substantive" rights was not established.  *See Alexander, supra.*   Unlike forum-specific procedural rules, such as Fed.R.Civ.P. 23 in the federal court system, Section 216(b) is a statutory provision conferring valuable benefits on an FLSA claimant regardless of the forum chosen to assert the FLSA claim.  The availability of Section 216(b)'s collective action procedure is integrated into the terms of the statute itself and independent of the procedural requirements for class actions that would otherwise apply in a federal or state court.  *See, e.g., Grayson v. K mart Corp.,* 79 F.3d 1086, 1096 n. 12 (11th cir. 1996); *Haro v. City of Rosemead,* 174 Cal.App. 4th 1067, 1072, 94 Cal.Rptr. 3d 874, 877-78 (2009). Although the benefits conferred by this provision can be waived if the parties agree to do so, such a waiver should not be inferred from doubtful language.

outcome may have been what DCDC privately expected the contract to mean, a contracting party's unilateral, unexpressed intent is not a sufficient basis to guide contractual interpretation, or to impose mutual obligations on the contracting parties.  Interpretation of the relevant language as connoting a shared mutual intent to silently strip Claimants of a valuable incident of their FLSA claim, and silently excuse DCDC from complying with the requirements of Section 216(b), is a doubtful construction of the language the parties chose to use.  Even with the Bilateral Language relied upon by Respondent, these agreements' promise to arbitrate "any controversy or claim arising out of or relating to your employment," coupled with the agreements' silence as to any intent to exclude the valuable procedural entitlement granted to FLSA claimants under Section 216(b) from their agreement to arbitrate, suggests, and at the very least creates doubt as to whether, the agreements were intended to authorize arbitration of all of the statutory components of the "claims" they otherwise agreed to make arbitrable.

For these reasons, I conclude that the language employed by the parties creates substantial and legitimate doubt as to whether these Employment Agreements were intended to permit or to preclude collective arbitration.

**2.    Review of the Employment Agreements Under the General Principles of Contract Interpretation Mandated by Louisiana Law.**

Based on the conflicting record presented by the language the parties chose to use in their Employment Agreements, it is also appropriate to review the parties' agreements under the principles of contract interpretation mandated by Louisiana law.

Several of these principles also seem to point in contradictory directions.  At best, they also seem to support the conclusion that what the parties intended their language to mean is reasonably in doubt. For example, *Ranger Ins., supra,* 921 So.2d 1040 at 1043, counsels that "[t]he interpretation of a contract is the determination of the common intent of the parties with courts giving the contractual words their generally prevailing meaning unless the words have acquired a technical meaning. . .."  For all of the reasons discussed above, the particular language used by the parties here creates legitimate and unavoidable doubt as to whether the parties intended to permit or forbid a collective proceeding as authorized by Section 216(b) in their arbitrations of the covered FLSA claims and other "controversies."  The language used by the parties is not sufficiently "clear and explicit" to eliminate legitimate doubt on this point.  Similarly, *Ranger,* instructs that "each provision in an agreement must be interpreted in light of the other provisions so that each is given the meaning suggested by the agreement as a whole . . .."  *See* Louisiana Civil Code  Art. 2050.  Here, construing the agreements "as a whole" still leaves a legitimate doubt as to whether the parties intended the Bilateral Language relied upon by Respondent to sharply narrow the scope of the promise to arbitrate "any controversy" relating to the employee's employment relationship in a manner that effectively abrogates the signatory employee's rights under Section 216(b), or whether the signatory employee's statutory right to proceed collectively mandated by Section 216(b) was intended to be included in the broad promise to arbitrate FLSA claims.  In the same vein, *Ranger* states that "[a]lthough

CLAUSE CONSTRUCTION AWARD - 13

a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include . . .."  This principle theoretically could favor either Claimants (because the agreements do not expressly include a provision denying the signatory employee the ability to arbitrate his Section 216(b) entitlement to proceed collectively) or Respondent (because the agreements do not expressly authorize collective arbitration).  Article 2053 of the Louisiana Civil code provides that "[a] doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties."  This provision, although applicable to the "doubtful provision[s]" we have here, either directs us to factors ("usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties") not developed in the record presented or to considerations ("the nature of the contract, equity . . .") that give little guidance as to how to resolve the doubts created by the contract language used by the parties in their Employment Agreements.

Article 2056 of the Louisiana Civil Code, on the other hand, provides clear and helpful guidance on the contract interpretation issues under review here:

> Art. 2056. In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.
>
> A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.

As discussed above, the record presented established that DCDC "furnished the text" of these agreements - they were drafted by DCDC - and also established that the Employment Agreements were "executed in a standard form" and were required as a condition of employment with DCDC.   Reddoch Aff.   These factual findings trigger applicability of Article 2056 if the requisite "doubt" exists as to the meaning of the disputed contractual provisions.

Respondent argued that Article 2056 is inapplicable to the present clause construction decision because there is "no doubt" what the parties intended these agreements to mean.  I carefully listened to and evaluated those arguments, which were well and strongly made.  At the end of the day, however, I conclude that any reasonable analysis of the language used by the parties leaves us with a doubt - a doubt that cannot be otherwise resolved except  by application of Article 2056 - as to whether these agreements were intended to authorize collective arbitration of the Claimants' FLSA claims.  The Bilateral Language emphasized by Respondent certainly supports the contractual interpretation it favors.  But reading the entire agreement as a whole, as mandated by Article 2050, that language must be read and construed together with the broad language indicating that the parties intended to arbitrate not just FSLA "claims" but also ""any *controversy* or claim arising out of or *relating to your employment*" (emphasis added) - language that is broad enough to encompass collective arbitration of FLSA

CLAUSE CONSTRUCTION AWARD - 14

overtime pay disputes.   Moreover, the parties' language plainly covers FLSA "claims." As discussed above, the Section 216(b) entitlement to proceed collectively is a statutorily-prescribed component of an FLSA claim that has been a prominent feature of the FLSA for many years.  Although the weight of authority establishes that, if desired, this entitlement could have been waived, the language used in these agreements does not evidence any clear intention to do so.   Whether or not the contract language satisfies the requirements of Louisiana law to accomplish such a waiver,  it is sufficiently Delphic to allow for a reasonable and well-grounded doubt as to whether these parties intended to include or forbid the entitlement to proceed collectively granted by Section 216(b) in the arbitrations of FLSA claims mandated by their arbitration agreements.

Accordingly, Article 2056 requires that the provisions in the Employment Agreements that bear on whether the parties intended to authorize collective arbitration of Claimants' FLSA claims "must be interpreted against" DCDC, "the party who furnished its text."   Article 2056 further requires that those provisions in these standard form agreements be construed "in favor of the other party" - Claimants.   Under those circumstances, the doubt created by the language used in these agreements as to whether the parties intended to permit collective arbitration of Claimants' FLSA claims must be resolved against DCDC, the drafter of the agreements.  *See, e.g., McGoldrick v. Lou Ana Foods, Inc.,* 94-400 (La.App. 3 Cir. 11/2/94), 649 So.2d 455, 458; *Miguez Leckband (A Law P'ship) v. Holston's Ambulance Serv., Inc.,* 614 So.2d 150 (La.Ct.App. 1993).

Accordingly, construing the particular contractual language used by the parties as required under general principles of Louisiana law governing interpretation of contracts generally, I conclude that these agreements do authorize collective arbitration of Claimants' FLSA claims.

**Whether Section 216(b) of the FLSA Constitutes a "Default Rule."**   The parties expended considerable effort debating whether Section 216(b) of the FLSA erects a "default rule" of the sort discussed in *Stolt-Nielsen, supra,* 559 U.S. 662, at 673-74.  These arguments were not established and play no part in this **Clause Construction Award**.  The decisions reached here are based on my construction and interpretation of the parties' Employment Agreements, not on any finding that Section 216(b) entitles Claimants to proceed collectively on their FLSA claims in this arbitration whether or not the Employment Agreements so provide. Claimants are entitled to proceed collectively because the parties' contracts, properly construed as required under Louisiana law, authorize them to do so, not because of some extra-contractual "default rule."

## CONCLUSION

For the reasons given above, this Tribunal concludes that the arbitration agreements contained in the relevant Employment Agreements permit the present arbitration to proceed on a collective basis, as provided in Section 216(b), as to Claimants' FLSA claims.   The record presented did not establish that the arbitration agreements permit broader "opt-out" style class arbitration of the FLSA claims, or either class or collective arbitration of any state law-

based claims.  As provided in Rule 3 of the Class Arbitration Rules, this **Clause Construction Award** is a partial final award:  Only the clause construction issues addressed above are adjudicated in this partial final award.  The Tribunal reserves and retains jurisdiction over all other disputes at issue in this matter, but all proceedings in this arbitration are hereby stayed for a period of thirty days from the date hereof to permit any party to move a Court of competent jurisdiction to confirm or vacate this partial final Clause Construction Award.  The parties are directed to keep me apprised of whether any such judicial proceedings are initiated and, if so, of their progress.

DATED this <u>14th</u>  day of <u>August</u>, 2015.

_____
Thomas J. Brewer
Arbitrator