UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DRILL CUTTINGS DISPOSAL COMPANY LLC, | § § § | No. 5:16-CV-00860 |
| Plaintiff, | § § § | |
| KYLE LYNN and JOSEPH GUTIERREZ, | § § § § | |
| Defendants. | § | |

ORDER CONFIRMING ARBITRATION CLAUSE CONSTRUCTION AWARD

Before the Court is a Motion to Confirm an Arbitration Clause Construction Award filed by Defendants Kyle Lynn and Joseph Gutierrez (collectively "Defendants"). (Dkt. # 42.) Pursuant to Local Rule CV-7(h), the Court finds this matter suitable for disposition without a hearing. After careful consideration of the memoranda filed in support of the instant Motion, the Court, for the reasons that follow **GRANTS** the Motion and **CONFIRMS** the Arbitration Clause Construction Award (Dkt. # 42).

BACKGROUND

Defendants are former employees of Plaintiff Drill Cuttings Disposal Company LLC ("DCDC"). On July 1, 2014, Defendants filed a lawsuit in the United States District Court for the Western District of Texas asserting individual

1

and collective claims for failure to pay overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., ("DCDC I"). (Guttierrez et al. v. Drill Cuttings Disposal Co., No. 5:14-cv-17-DAE, Dkt. # 1 (W.D. Tex 2014).) On February 20, 2015, the parties filed a "Stipulation and Proposed Order Re Arbitration." (Id. at Dkt. # 33.) On February 23, 2015, the Court entered an order compelling arbitration and ordering that "except[] the limited judicial review permitted by the Federal Arbitration Act, Plaintiffs' claims in this case are dismissed with prejudice." (Id. at Dkt. # 34.)

      The matter proceeded to arbitration administered by an arbitrator from the American Arbitration Association pursuant to the parties' Employment Agreement. On August 14, 2015, Arbitrator Thomas J. Brewer issued a reasoned opinion entitled "Clause Construction Award" determining that the Employment Agreement's arbitration clause permitted the matter to proceed as a collective action in arbitration, in much the same way FLSA claims in federal court may proceed collectively pursuant to 29 U.S.C. § 216(b). ("Clause Construction Award," Dkt. # 42-2, Ex. A.) In making his determination, Arbitrator Brewer solely considered the Employment Agreement's express language and construed it using Louisiana law. (Id. at 15.)

      On September 14, 2015, DCDC filed a Petition to Vacate, Modify or Correct the Arbitration Award in the 15th Judicial District Court in Lafayette

Parish, Louisiana ("DCDC II"). (Dkt. # 1-2, Ex. A.) In its state court petition, DCDC asserts that Arbitrator Brewer's Clause Construction Award "was irrational, arbitrary and/or capricious folly, in manifest disregard of the law . . . and/or exceeded the powers, authority and/or jurisdiction granted to him." (Id. ¶ 27.) On October 14, 2015, Defendants removed DCDC II to the United States District Court for the Western District of Louisiana. (Dkt. # 1.) The Western District of Louisiana determined subject-matter jurisdiction existed based on 28 U.S.C. § 1331 pursuant to StoltNielson, S.A. v. Animal Feeds Int'l Corp., 559 U.S. 662 (2010). (Dkt. # 20.) On August 26, 2016, the Western District of Louisiana issued an order granting a motion to transfer venue, resulting in the transfer of DCDC II to this Court. (Dkt. # 40.)

On October 5, 2016, Defendants in DCDC II filed a Motion to Confirm the Clause Construction Award. (Dkt. # 42.) On October 20, DCDC's President, Jeffrey Reddoch, filed a "Pro Se Motion for Extension of Time to File."[1] (Dkt. # 46.) The next day the Court denied that motion on the basis that Mr. Reddoch was not a licensed attorney, noting that "[i]t is axiomatic and well-settled law that 'a corporation cannot appear in federal court unless represented by a licensed attorney.'" (Dkt. # 45 (quoting Memon v. Allied Domecq QSR, 385 F.3d

---

[1] The Court's docket reflects that DCDC is represented by Joseph L. Lemoine Jr., from Lafayette, Louisiana. However, official court documents indicate that Mr. Lemoine is not admitted to practice in the Western District of Texas.

871, 873 (5th Cir. 2004)).)  On October 27, 2016, DCDC, while represented by counsel, filed a Response.[2]  (Dkt. # 48.)

## LEGAL STANDARD

"Courts may vacate an arbitrator's decision 'only in very unusual circumstances.'"  Oxford Health Plans LLC v. Sutter, --- U.S. ---, 133 S. Ct. 2064, 2068 (2013).  By statute, a United States court may only vacate an arbitral award in four instances:

> (1) Where the award was procured by corruption, fraud, or undue means;
>
> (2) Where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)−(4).  Where a party invokes § 10(a)(4) to argue that an arbitrator "exceeded their powers," the scope of the Court's review is limited and

---

[2] Pursuant to Local Rule CV-7(e)(2), "a response to a dispositive motion shall be filed not later than 14 days after the filing of the motion."  DCDC's response was filed 22 days after the filing of the instant motion.  Accordingly, the Court need not consider the response, especially in light of the fact that DCDC failed to appropriately seek leave for an extension of time.

well-settled.  "[T]he Supreme Court has made clear that district courts' review of arbitrators' awards under § 10(a)(4) is limited to the 'sole question . . . [of] whether the arbitrator (even arguably) interpreted the parties' contract.'"  <u>BNSF R.R Co. v. Alstom Transp., Inc.</u>, 777 F.3d 785, 788 (5th Cir. 2015) (quoting <u>Oxford Health</u>,133 S. Ct. at 2068).)  The question is "not whether [the arbitrator] got its meaning right or wrong."  <u>Oxford Health</u>, 133 S. Ct. at 2068.  In other words, "the task of an arbitrator is to interpret and enforce the contract, not to make public policy."  <u>Stolt-Nielsen</u>, 559 U.S. at 671.  "This is an objective test."  <u>BNSF R.R. Co.</u>, 777 F.3d at 78877 (citing <u>Stolt-Nielsen</u>, 559 U.S. at 676).)  "Thus a party challenging an arbitration award need not adduce hard-to-obtain evidence concerning the arbitrator['s] true intent.  <u>Id.</u>  However, the Court "must resolve all doubts in favor of arbitration."  <u>Id.</u> (quoting <u>Brook v. Peak Int'l, Ltd.</u>, 294 F.3d 668, 672 (5th Cir. 2002).)  Accordingly, the party challenging an arbitration award under § 10(a)(4) carries a "heavy burden."  <u>Oxford Health</u>, 133 S. Ct. at 2068.

    To determine whether an arbitrator exceeded his or her authority, the Court "should consult the arbitrator's award itself [because] [t]he award will often suggest on its face that the arbitrator was arguably interpreting the contract."  <u>BNSF R.R. Co.</u>, 777 F.3d at 788.  In reviewing the award, the Court should consider the following pieces of relevant evidence: (1) whether the arbitrator identifies [his or] her task as interpreting the contract; (2) whether she cites and

analyzes the text of the contract; and (3) whether [his or] her conclusions are framed in terms of the contract's meaning.  Id. (citing Oxford Health, 133 S. Ct. at 2069).

In terms of collective or class arbitration, "a party may not be compelled under the [Federal Arbitration Act ("FAA")] to submit to class arbitration unless there is a contractual basis concluding that the party *agreed* to do so." Stolt-Nielsen, 559 U.S. at 684.  This is so because "[a]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." AT&T Tech., Inc. v. Commc'n Workers, 475 U.S. 643, 648−49 (1986).  Arbitrator's may not presume "that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." Stolt-Nielsen, 559 U.S. at 687.  Accordingly, a party may not be compelled to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so.

## DISCUSSION

Defendants argue that Arbitrator Brewer appropriately restricted his analysis to solely interpreting the Employment Agreement under applicable contract law.

Upon review, the Clause Construction Award shows on its face that Arbitrator Brewer was interpreting the Employment Agreement. First, Arbitrator

Brewer correctly identified his task as interpreting the contract by appropriately applying Louisiana law and the legal standards set forth above. (Clause Construction Award at 3−5.)  Second, Arbitrator Brewer cited and analyzed the relevant contractual provisions.  (Id. at 6.)  He specifically cited the clause stating "you agree that any controversy or claim arising out of or relating to your employment with [DCDC] shall be settled by arbitration."  (Id.)  Finally, his conclusion is framed in terms of the contract's meaning.  (Id. at 8−15.) Specifically, Arbitrator Brewer concluded that "construing the particular contractual language used by the parties as required under general principles of Louisiana law governing interpretation of contracts generally, I conclude that these agreements do authorize collective action arbitration of [Defendants] FLSA claims."  (Id. at 15.)

In so concluding, Arbitrator Brewer's analysis initially focused solely on interpreting the Employment Agreement's plain text and attempting to determine the parties' intent.  He determined that the plain "language employed by the parties creates substantial and legitimate doubt as to whether these Employment Agreements were intended to permit or to preclude collective arbitration."  (Id. at 13.)  Upon making this determination, the arbitrator turned to Louisiana law to interpret this ambiguity.  The arbitrator found Article 2056 of the Louisiana Civil Code applicable because the face of the contract was ambiguous.

(Clause Construction Award.)  Article 2056 states "[i]n case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text."  La. Civ. Code. art. 2056.  He concluded that because DCDC furnished the Employment Agreement, Louisiana contract law required the ambiguity about whether the parties' intended to consent to collective arbitration be interpreted against DCDC.  (Clause Construction Award at 15.)

While the Court need not address DCDC's Response, the Court notes that its arguments are without merit.  For example, DCDC's Response begins by arguing that the arbitrator started from a false premise because he "viewed his task as to only construe the contract from the four corners of the contract, and from those four corners, to determine only whether the parties had agreed to 'permit' or 'preclude' collective action."  (Dkt. # 48 at 4.)  This argument is incredulous because Supreme Court precedent requires the arbitrator to only construe the contract from its four corners.  Oxford Health, 133 S. Ct. at 2068 ("[A]n arbitral decision even arguably construing or applying the contract must stand, regardless of the court's view of its (de)merits." (internal quotation omitted)).  DCDC's argument that the arbitrator's decision was made in manifest disregard of the law is also without merit.  (Dkt. # 48 at 7.)  DCDC argues that the arbitrator disregarded Articles 2048, 2051, and 2054 of the Louisiana Civil Code regarding interpretation of contracts.  However, the arbitrator expressly noted these provisions as relevant

8

law to his analysis.  (See Clause Construction Award at 5.)  Therefore, the Court finds that the arbitrator did not reach his determination in manifest disregard of law.

Accordingly, the Court finds the arbitrator focused on the Employment Agreement's text and analyzed (whether correctly or not makes no difference) whether it demonstrated the parties' intent to submit to collective arbitration.  This suffices to show that the arbitrator did not "exceed[] [his] powers."  9 U.S.C. § 10(a)(4).  This is so because § 10(a)(4) "permits courts to vacate an arbitral decision only when the arbitrator strayed from his delegated tasks of interpreting a contract, not when he performed that task poorly."  Oxford Health, 133 S. Ct. 2070.

## CONCLUSION

For the reasons explained, the Court **GRANTS** the Motion to Confirm the Clause Construction Award (Dkt. # 42).  The Court **ORDERS** that except for the limited judicial review permitted by the Federal Arbitration Act, DCDC's claims in this case are **DISMISSED WITH PREJUDICE**.  The Court **ORDERS** the hearing scheduled for December 28, 2016, cancelled.

**IT IS SO ORDERED.**

DATE: San Antonio, Texas, November 1, 2016.

_____
DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE

9